# THE NATIONAL SAFE DEPOSIT, SAVINGS & TRUST CO.

*v.*

## HEIBERGER.

WILLS; PROBATE PRACTICE; CAVEAT; FRAMING OF ISSUES.

1. Where a caveat to a will admits the formal execution of the will, but attacks the testamentary capacity of the testator, such admission will not dispense with the necessity of proving the execution, and the orphans' court should either require the execution to be proved before framing issues on the caveat, or should frame a preliminary issue thereon as to whether the will was formally executed by the testator.

2. Where a caveat to a will alleges that the testator was of sound mind, except for insane delusions with respect of those who were the natural objects of his bounty, an issue as to whether " At the time of the execution of the paper writing by the said testator, was he of sound and disposing mind and capable of executing a valid deed or contract? "— is a proper one to be submitted to the jury, to be followed by another issue, if the caveator so desires, based on the alleged existence of insane delusions of the testator. Under the broad issue alone, however, the caveator on the trial could confine his evidence to the alleged special incapacity of the testator by reason of the insane delusions.

3. *Quære*, whether a finding by a jury in a will contest in favor of the proponent of the will on a special issue as to whether the testator was at the time of the execution of the will under the influence of insane delusions, would be *res judicata* as to all persons in respect of the general capacity of the testator to make a will.

No. 1170.  Submitted March 4, 1902.  Decided April 1, 1902.

HEARING on an appeal (specially allowed) by the caveatee from an order of the Supreme Court of the District of Columbia, holding a special term for orphans' court business, framing issues for trial by jury on a caveat to a will.

*Reversed.*

The COURT in its opinion stated the case as follows:

An appeal has been granted in this case from an order of the Supreme Court of the District, holding a special term for orphans' court business, framing the issues to be submitted to the jury on the trial of the caveat of Mary W. Heiberger, filed in opposition to the probate of the will of John W. Nairn, deceased.

The will bears date July 26, 1900, and was filed for probate May 22, 1901, by the National Safe Deposit, Savings and Trust Company, the executor named therein.

The caveat of Mary W. Heiberger, one of the children of the testator, was filed May 27, 1901. She admits the formal averments of the petition for probate, and concludes as follows:

" Further answering, this respondent says that at the time of the death of said John W. Nairn, in addition to the personal property left by him, he was the owner of real estate in the District of Columbia of the value over and above all encumbrances of about six hundred thousand dollars ($600,000), the annual rentals of which, at the time of his death, amounted to about $30,000, and that at the time of his death, besides his widow and children, he had living the following grandchildren: Children of Mary W. Heiberger and her husband, Franz J. Heiberger: Elizabeth Flora Heiberger, who is twenty-one years of age; Franz J. Heiberger, Jr., who is eighteen years of age; Fanny Heiberger, who is fourteen years of age, and Dorothy Heiberger, who is ten years of age. Children of Thomas S. Nairn and his wife, Sallie L. Nairn: Thomas Gilbert Nairn, who is sixteen years of age, and Hattie L. Nairn, who is fourteen years of age.

" She avers that at the time said instrument dated July 26th, 1900, was executed by said John W. Nairn he was not of sound or disposing mind or memory or capable of executing a valid deed or contract, and that at said time said John W. Nairn was subject to, and in the execution of said instrument was controlled by, certain insane delu-

sions as to his children and grandchildren, who were the natural objects of his bounty, which rendered him incapable of making a valid disposition of his property, or any part thereof, by will and that for the foregoing reasons said instrument was wholly invalid as a will or testament.

" Wherefore this respondent prays that this answer shall be taken as her caveat to said alleged will; that probate and record of said alleged will may be denied, and that it may be adjudged and decreed by this court that said John W. Nairn died intestate."

The reply of the executor specifically denied the subjection of the testator to insane delusions, and concluded with the averment, " that at the date of said paper writing as well as before and after that time, he was of sound and disposing mind and memory and capable of making a valid deed or contract, and that said paper writing is the valid last will and testament of the said John W. Nairn."

The caveator then filed an amended answer substituting the following for the corresponding averment in the original as above set forth:

" She admits that at the time said instrument dated July 5th, 1900, was executed by said John W. Nairn he was capable of managing his estate and attending to business affairs in general, and that he was at that time of sound mind in all respects except as hereinbelow indicated, but she avers that at said time said John W. Nairn was not of sound or disposing mind or memory, in this, that at said time he was afflicted with a disease of the brain causing insane delusions on his part as to his children and his grandchildren, who were the natural objects of his bounty, and his property, which prevented him from dealing rationally with any subject in which the interests of his children or grandchildren were involved, or which concerned a testamentary disposition of his property."

The executor objected to the issue tendered by the caveator in accordance with the foregoing, and tendered the following instead:

" First. Was the paper writing propounded as the last will and testament of John W. Nairn, bearing date the 26th day of July, 1900, executed by him in due form of law ?

" Second. At the time of the execution of said paper writing by the said John W. Nairn, was he of sound and disposing mind and capable of executing a valid deed or contract? "

The court overruled the objections of the executor, denied the issues tendered by it, and adopted the following as the issue to be submitted:

" Was said John W. Nairn at the time of the execution and publication of the paper writing in question, under the influence of any insane delusion or delusions with respect to his property and the natural objects of his bounty, or either of them, which prevented him from then having a sound and disposing mind and rendered him incapable of executing a valid deed or contract where the subject of the said delusion or delusions was involved? "

*Mr. C. C. Cole, Mr. W. F. Mattingly* and *Mr. H. W. Sohon* for the appellant:

1. The issue as to capacity should have been general, not confined to the question of delusions. The object should be to end litigation, not to prolong or multiply it. The capacity of the testator to make the will is assailed. The present allegation is, it is true, that the incapacity arose from delusions. But if the verdict upon the issue already framed should be favorable to the will, it would not settle the general capacity, but only negative the existence of delusions. The same caveator, or some other interested party, might have another issue as to incapacity, based upon the allegation of the existence of *senile dementia,* or any other form of insanity not embraced in delusions. In this way there might be several issues, tried at different times, by different parties, to determine the capacity of the testator, when it should be finally settled by one trial. See *Dugan* v. *Northcutt,* 7 App. D. C. 365.

There it is said that several issues on various grounds may be tried at different times, but in this case there is an effort to divide the ground of capacity into several issues to be tried at different times. It was also said by this court in the case just cited that it was the policy of the law to settle the question of the validity of a will upon all grounds in a single trial, if possible. That policy is emphasized by the act of Congress in relation to the probate of wills, approved June 8, 1898, now a part of the code of this District.

By paragraph 2 of the act of 1898, after a will has been admitted to probate neither its execution nor validity can be questioned upon any ground or in any proceeding, except by a caveat. But by paragraph 5 caveats may be filed after probate, by an infant within one year after he becomes of age, by a resident served with process within one year, and by a nonresident within two years after probate. By paragraph 6, whenever a caveat shall be filed all persons who might claim against the will or under it, are required to be served with copies of the issue and notice of time and place of trial, personally if they are within the jurisdiction, and by publication if they are not, and the court is required to direct any other and further issues upon proper application, which any party would be entitled to have tried, and provides that " In all cases in which such issues shall be tried the verdict of the jury and the judgment of the court thereupon shall, subject to proceeding in error and to such revision as the common law provides, be *res judicata* as to all persons, nor shall the validity of any such judgment be impeached or examined collaterally."

It will be observed that according to the above-quoted language the *" verdict "* and *" judgment "* are to be *" res judicata "* as to all persons, not the questions of the execution and validity of the will, as is provided in paragraph 2.

Probably, under the language of this act, it would be held, as under the statutes in force when *Dugan* v. *Northcutt* was decided, that any party interested would be entitled to have the trial of any issue affecting the validity of the will that had not theretofore been tried within the limits of time fixed

by paragraph 5. But the provisions of the law of 1898 requiring notice to be given to all persons in interest, and that all issues shall be directed to which any party may be entitled, even after a day has been set for trial, and although demanded by a party not a caveator, is strongly indicative of the legislative intent that one trial shall settle the validity of the will so far as that may properly be done.

To try this case upon the single narrow issue already directed would be to invite future litigation over the question of testamentary capacity. Any one of the resident heirs, except the caveator, would be entitled within one year after the will should be admitted to probate, and John J. Nairn, who is a nonresident, within two years thereafter, to have an issue tried as to testamentary capacity, so they based their allegation of incapacity upon any other ground than delusions. They are not estopped by the admission of general capacity in the pleading of the caveator. It is submitted that the question of testamentary capacity should be determined once for all by a single issue and trial. Such an issue and trial would render that question *res judicata* as to all persons, as was also held by this court in *Dugan* v. *Northcutt*. No one could be injured or prejudiced by such an issue and trial. If any one desires to assail the general capacity of the testator, it should be done now; and if no one desires to do it now, the door should be closed to an attempt to do it in the future. No reason is suggested why any one desiring to raise this question cannot do it as well now as at any other time.

The caveator cannot be prejudiced by having a general issue of capacity. Any evidence that would be admissible under the special issue of delusions would also be under the general issue, and *vice versa*. The proponent of the will would be entitled to introduce the same evidence in relation to general capacity to disprove the existence of delusions that it would if general capacity were the issue, so that neither party would be benefited in this particular by the narrow issue.

Testamentary capacity is defined in this jurisdiction by statute. The issue to determine its existence or nonexistence

should be in the language of the statute. If it be contended that delusions, or any other form of mental derangement or weakness exists, affecting this capacity, the proper way to direct the attention of the jury to the particulars of the proof is by suitable instructions, and not by embodying the special facts claimed to exist in the issue.

In the case of *Safe Deposit Company* v. *Sweeney,* 3 App. D. C. 401, this court held it error to direct an issue as to the existence of delusions affecting testamentary capacity. It was also held in that case that there might be cases in which such special issue would be proper, but that it should be " *in addition and in subordination to the first,*" or broad issue. Indeed, it is apparent that a jury could not determine whether the testator has delusions without at the same time deciding whether he was of sound mind generally aside from such alleged delusions. The existence or nonexistence of delusions depends so largely upon the general strength and character of mind that one cannot be determined without deciding the other. So that if the narrow issue is proper at all in this case it could only be so in connection with and subordinate to the broad one.

But it is submitted that the special issue in connection with the general one would be unnecessary, confusing and possibly misleading. The real question is whether the testator at the time he executed the paper as his will was capable of executing a valid deed or contract. If he was afflicted with delusions, as recited in the issue, he was not. The issue recites the supposed facts and not the conclusions to be drawn from them.

It is also said in the case of *Safe Deposit Company* v. *Sweeney,* that a special issue as to delusions should not be directed unless there " be some foundation therefor in the allegations of the caveat in order that the orphans' court may have a proper opportunity to determine the necessity or expediency of the demand," for such issue.

2. The court erred in overruling appellant's objections to the sufficiency of the amended caveat to raise any issue.

The amended caveat admits general capacity and attempts to allege special incapacity arising from delusions. Had the

caveat alleged incapacity generally to make a deed or contract, that would have been sufficient to require the formation of the general issue under which evidence of delusion would have been admissible. But the only effort of the caveat is to make a case of incapacity by alleging insane delusions. This is attempted as to a mind admitted to be generally sound. The substance of the allegation is that the testator was afflicted with insane delusions in relation to his children, grandchildren, and property, which prevented him from acting rationally in making a disposition of his property. This is the statement of a legal conclusion. No fact is stated to enable the court to determine whether he had any delusions and if so whether they were insane. What did he believe about his children and grandchildren and property? Wherein was such belief impossible generally or under the particular circumstances of the case? All erroneous beliefs do not constitute insane delusions. What he is alleged to have believed about his said relations and property and wherein such belief was impossible should have been set forth, so that the court could judge whether an issue upon this question was proper. Is not that the meaning of the language of this court quoted from the case of *Safe Deposit Co.* v. *Sweeney?* Can the court " determine the necessity or expediency of the demand " from the bare allegation that there were insane delusions in relation to relatives and property without stating their quality or character?

3. The court erred in refusing to direct an issue as to the due execution of the will.

The law requires that issue, and where there is a caveat it should be directed whether any party requires it or not. The will cannot be admitted to probate upon the admission of the parties of its due execution, but that fact must be proved (paragraph 4, act of 1898).

The issue of due execution must be tried either by court or jury before the will can be admitted to probate.

As tending to settle as many questions that may affect the validity of the will in one trial as possible, wherever there is a caveat, although the execution of the will may not be as-

33

sailed, the court, *sua sponte,* should direct that issue to be tried. At the trial that should be the issue upon which evidence should be first introduced. There is no occasion to introduce evidence upon other issues until a *prima facie* case of due execution is made by the proponent. If the caveator admits the execution, or introduces no evidence upon that issue, the fact that there is such an issue need not change the rule that he should have the opening and closing to the jury.

*Mr. A. S. Worthington, Mr. F. P. B. Sands* and *Messrs. R. Ross Perry & Son* for the appellee:

1. The radical question to be discussed and decided in this case is this: Where a caveator admits the general mental capacity, sanity and contracting ability of an alleged testator and attacks only his testamentary capacity by reason of special delusions, monomania or partial insanity invalidating his testamentary capacity, does the law compel him to deny what he has explicitly admitted?

Must an issue be raised with respect to, and must the jury solemnly determine, a question which no one asks? Must a fact admitted of record be inevitably forced for dispute upon parties who do not question it, and for adjudication upon a court whose function is to adjudicate only litigated questions?

It would seem that a negative answer should be returned to these questions. The object of all systems of pleading is to produce an issue which will be a proper statement of a proposition competent to determine the controversy asserted on one side and denied on the other. 1 Chitty Pl. (4th Eng. ed.) 195, 565, 566; Stephen Pl. (1st Eng. ed.) 145; Story's Eq. Pl. (7th ed.), Secs. 1–6; *McFaul* v. *Ramsey,* 20 How. 523, 524. Nor can there be any question that in all systems of pleading the general rule is that, where an issue is properly joined, he who asserts the affirmative must prove it. *Simonton* v. *Winter,* 5 Pet. 148, 149. But if these propositions be true, and they are so elementary as hardly to be

questioned, the caveator in this case cannot be forced against her will and contrary to what she admits to be the fact, to affirm in pleading and to prove in evidence that the alleged testator was a man of general unsound mind and incapable of making any valid deed or contract. The provisions of the Maryland act of assembly of 1798, chap. CI, subch. 1, par. 3, are an anachronism. Literally they are as follows: "No will, testament or codicil, shall be good or effectual for any purpose whatever, unless the person making the same be, at the time of executing or acknowledging it as hereafter directed, of sound and disposing mind, and capable of executing a valid deed or contract."

This definition of sanity was consistent with the facts then known to science. To-day it is and for many years it has been imperfect and misleading. It is an anachronism. *Cessante ratione, cessat et ipsa lex.*

When Blackstone published his first edition in 1765, a man born deaf, dumb and blind was regarded by the law as an idiot, and probably this was then practically correct. But within the past fifty years we have had the marvelous instances of Laura Bridgman and Helen Keller. To-day it is generally recognized that a person who has only the sense of touch with which to communicate with the external world can nevertheless develop more than ordinary intelligence and take on a high degree of education and culture.

When Blackstone wrote, the state of scientific knowledge with respect to mental diseases is indicated by the following language of his: "A lunatic, or *non compos mentis,* is one who has had understanding, but by disease, grief, or other accident, hath lost the use of his reason. A lunatic is indeed one that hath lucid intervals, sometimes enjoying his senses and sometimes not, and that frequently depending upon the change of the moon." (Book 1, p. 304.) It was not until the year 1792 that Pinel liberated the wretched persons chained as lunatics in the Bicêtre. McMaster, in his History of the People of the United States, says, speaking of the condition of things in this country in the year 1784: "Keepers knew no other mode of silencing the ravings of a madman than tying

him up by the thumbs and flogging him till he was too ex-
hausted to utter a groan." (Vol. 1, p. 101.) For a detailed
account of the progress of science with respect to mental dis-
eases see American Encyclopædia, *sub voc.* " Insanity."
Encyclopædia Britannica, *sub voc.* " Insanity." By Cleven-
ger, an author pre-eminent to-day as an authority upon this
subject, it is stated that " Psychiatry has become a science in
the last few decades * * * ." Medical Jurisprudence
of Insanity, Vol. I, p. 1. This statement is supported by the
facts detailed and the authorities cited in the first and second
chapters of this work.

It is not disputed to-day that a man may be the victim of
such partial insanity, monomania, delusions, or by whatever
other name the disease may properly be called, as to totally
incapacitate him from doing a legally valid act connected
with such partial insanity, etc., although his acts with respect
to all other matters may be competent and valid. See Cleven-
ger, chap. IX and note to the case of *People* v. *Hubert,* 63
Am. St. Rep. 80–108; *Orchardson* v. *Cofield,* 40 L. R. A.
256, and cases cited at pp. 258, 259, by counsel; *District of
Columbia* v. *Armes,* 107 U. S. 521; *Townshend* v. *Town-
shend,* 7 Gill, 10; *Brown* v. *Ward,* 53 Md. 376. But the
great leading case upon this subject and one of the earliest
ones is that of *Dew* v. *Clark,* Hagg. 19, decided in 1828,
in which the judgment of Sir John Nicholl has been generally
accepted as a clear and authoritative exposition of the law.
This case is so familiar to the court that extended reference
to the opinion is unnecessary. It may be well, however, to
call attention to an unreported decision of the Court of Ap-
peals of Virginia in the case of *Meade* v. *Bryan,* involving
the validity of the will of the celebrated John Randolph of
Roanoke, which will be found as an appendix to Dorsey's
Statutory Testamentary Law of Maryland, page 143 *et seq.,*
in which the leading case is recognized and followed. See
also the English case of *Banks* v. *Goodfellow,* L. R., 5 Q. B.
549–572, containing a strong opinion of the late Lord Chief
Justice Cockburn, concurred in by Blackburn, Mellor and
Hannen, JJ., recognizing the correctness and authority of
*Dew* v. *Clark.*

From all which it seems to follow conclusively that the question proposed in the issue framed by Barnard, J., is the proper one to be tried on the averments of fact made by the litigants in this proceeding and is a competent and material issue to determine the point in controversy.

But if this be so, surely, another issue which they do not make cannot be forced upon them.

It is submitted that upon reason and authority the granting of a second issue upon testamentary capacity would be error. It would be substantially the same as the first issue. It would invite the jury to answer affirmatively one issue, and at the same moment to destroy that answer by a response opposite in meaning upon another substantially identical issue.

This subject was to some extent considered by this court in the case of *National Safe Deposit, Savings & Trust Company of the District of Columbia* v. *Sweeney,* 3 App. D. C. 401, but the attention of the court was not so fully directed to the question involved in this case as is now required. That the inconvenience of two issues covering substantially the same subject was appreciated, is evident from the language of the court in that case.

It is obvious that the court intended to decide in that case, first, that it was improper to frame two issues substantially the same, as great inconvenience with respect to the verdict of the jury would result therefrom; secondly, that in a case where a caveat averred both general testamentary incapacity and also special insanity, it might be proper to have two issues framed in such a way that the answers of the jury to them would not conflict with each other. The attention of the court, however, was not called to the fact that even in such a case if the Maryland statutory words were followed, the verdicts might be inconsistent and contradictory. The court did not mean to decide that in a case where general capacity is conceded, the general testamentary issue in addition to the partial insanity issue must be thrust upon the caveator who was not willing or able to make the allegation of general mental capacity.

2. It is suggested that although in the amended caveat the caveator admits the due execution of the paper writing in

question and expressly disclaims raising any question with respect thereto, nevertheless the orphans' court is compelled to frame such issue and submit it to the jury. The only theory, as appears to counsel for the caveator, upon which such a claim can rest, is based upon the provisions of the act of Congress of June 8, 1898, and especially upon the provisions of section 6 of that act, which act is substantially reproduced in sections 130–142, both inclusive, of the code of law for the District of Columbia, enacted March 3, 1901, and in force since January 1, 1902. These provisions of the said act and of section 140 of the code, make the verdict of the jury and consequent judgment of the court, admitting to probate any will, conclusive as to all the world. It seems to be the idea that, therefore, every possible question which could arise with respect to the validity of a will should be raised in the issues and answered by the jury; but this claim, which certainly has no direct authority to support it, cannot derive any support from analogy. If the proceedings for the probate of a will under the present law be likened to an *in rem* proceeding because the result binds all the world, it cannot be contended that in such a proceeding all possible questions must be raised for adjudication. Only those questions are raised and decided which the parties who appear make by their pleadings. If an issue must necessarily be made as to due execution, why then one must be made as to undue influence, and as to fraud and as to forgery as well as one as to general and special testamentary incapacity. Indeed, there would seem to be no end to the issues which might be raised. The answer to all these contentions is that in this proceeding as in strict *in rem* proceedings, the court, having jurisdiction of the subject-matter, acquires jurisdiction with respect to the claims thereto of all parties by publication against them. When publication has been duly made, those who appear make their contentions and the court determines them. No judgment *in rem* can be reversed because a party who was published against but did not appear has a valid ground of complaint which he might have made had he appeared, nor can a person who did appear, make, after the

time within which he may legally do so has expired, a claim based upon any other ground than that which he has already made in his pleadings. Parties to an ordinary suit at law must make their motion for a new trial based upon newly-discovered evidence within the time prescribed by law. If they discover matters afterwards, which would have availed them upon the trial, it is too late.

But it is said that infants are interested.

The answer to that is that the provisions of section 138 of the code fully protect the interests of infants, directing that the court shall appoint a guardian to represent said infant with authority to file a caveat as he may be advised in behalf of the infant. If, because an infant be a party, the caveator can require the court to frame an issue which the guardian *ad litem* of the infant does not ask for with respect to the execution, the same theory would require all possible issues to be raised, because the infant's rights may depend not so much upon the questions of fraud, undue influence or testamentary capacity as upon that of execution. It is sufficient to say that it is the duty of the guardian *ad litem* of the infant to file a caveat and to frame all such issues as the facts in his knowledge or within his procurement will justify.

Section 135 of the code reproducing a similar provision of the act of 1898, provides "that in no case shall any will or testament be admitted to probate and record save· upon formal proof of its proper execution."

In accordance with this provision it has been the practice to have wills formally proved after the verdict of a jury establishing the will upon issues not including that of execution. This was done by Mr. Justice Hagner in the case of the will of Nathan A. Poole, deceased, and there would seem to be no difficulty or impropriety in the practice.

3. Finally, it is apparently contended by counsel for the caveatee that an issue should have been refused by the probate judge because the language of the amended caveat did not specify what the delusions were. This is a novel claim. The general issue of testamentary capacity refers only to sound and disposing mind and to ability to execute a deed or

contract: The language of the caveat where it dealt with general incapacity has followed that of the Maryland statutes. To require the caveator who alleges insane delusions with respect to persons or property, or both, or with respect to any other subject-matter, to specify what the delusion is would seem to be a departure from the primary principles of pleading. It is a general rule of pleading that only ultimate facts are to be averred and not the details of evidence by which they are to be proven. It is not necessary to adduce further authority upon this point than the case of *McAllister* v. *Kuhn,* 96 U. S. 87. Finally, it is submitted that the action of Barnard, Justice, was without error and that it should be affirmed.

Mr. Justice SHEPARD delivered the opinion of the Court:

The act of June 8, 1898, makes material changes in the former law relating to the probate of wills. Section 4 regulates the presentation of the will, notice to all persons affected, and the action to be taken in the event there be no opposition. Under certain conditions therein named, summary probate and record may be made by consent of the heirs-at-law and next of kin; but the section embraces a requirement of the former law in the following proviso: " That in no case shall any will or testament be admitted to probate and record save upon formal proof of its proper execution." (See also D. C. code, Sec. 135.) Subsequent sections regulate the proceedings where a caveat shall have been filed; but the requirement of formal proof of execution is not affected thereby. The caveator expressly admitted the execution of the will in due compliance with the requirements of the law, and the issue submitted by her and adopted by the court assumes the fact.

The fact of formal execution was submitted by the proponent of the will as a distinct issue, and should have been acted upon in some way because, as we have seen, it cannot be dispensed with by the admission of the caveator or the consent of all concerned.

Although the statute is silent on the point, it would seem that, when not put in issue by the caveat, formal proof of the execution might properly be required before the formation of the issues of the controversy; for if execution cannot be proved the caveat would necessarily be abated. To defer the production of the proof of execution until after the determination of the issues formed under the caveat would be to reverse the logical order of procedure. At the end of protracted litigation, too, the necessary proof of execution might be more difficult.

The proponent was right, therefore, in submitting this preliminary issue, and the same, not having been disposed of as suggested, ought to have been included in those framed for submission to the jury. It is in the public interest that all questions touching the validity of a will offered for probate should, if practicable, be comprehended in one trial and settled by one judgment. The submission of this issue, which the caveator does not controvert, would neither interfere with the proceedings of the actual trial nor deprive the caveator of her right to open and conclude that trial.

We are not advised that there was a settled practice under the former law in respect of the time when the formal proof of execution was required to be made, where a caveat had been filed which did not controvert the fact. But it is said that in one instance, at least, the proof was not required until after the trial of the controverted issues. It must be remembered, however, that no jury could be impaneled in the probate court under the former law. The issues framed under a caveat were transmitted to the circuit court for trial by jury. None other could be transmitted. The circuit court rendered no judgment upon the verdict, but certified the same to the orphans' court. When received by the orphans' court it could not be set aside, and was to be carried into effect by an appropriate decree. *Perry* v. *Sweeny,* 11 App. D. C. 404, 414, and cases cited. As the. question of formal execution, when not controverted, could not be transmitted for determination by the jury, and in the

absence of statutory regulation, the time when it should be heard was necessarily a matter within the discretion of the orphans' court, to be exercised under the special circumstances of each case.

The broad issue relating to the actual controversy, that was submitted on behalf of the proponent, embodies the test of capacity to make a will that is prescribed in the probate act of 1798 as follows: "No will, testament or codicil shall be good or effectual for any purpose whatever, unless the person making the same be, at the time of executing or acknowledging it as hereafter directed, of sound and disposing mind, and capable of executing a valid deed or contract." Chapter 101, subch. 1, par. 3. See also D. C. code, Sec. 1625.

The question for determination in all such cases is necessarily this: Had the testator the testamentary capacity required by the statute?

Though a man ordinarily of the requisite testamentary capacity, as is admitted in the caveat in this case, a testator, at the very time of the execution of a particular will, may have been suffering from acute mania as the temporary consequence of illness or intoxication, or he may have been under the influence of insane delusions with respect to his property or the natural objects of his bounty, as is alleged in this case; but each condition is evidence merely of the fact to be ascertained, namely, the want of the sound and disposing mind, which the law requires.

The fact to be found by the jury is not that the testator was demented at the particular time from any cause, or that he was the victim of insane delusions with respect to his property or the natural objects of his bounty, but whether from any one or more of these conditions, tending to show which evidence may be introduced, he was not of sound and disposing mind and capacity to make a valid deed or contract.

In an earlier case, determined under the law requiring all issues to be transmitted to the circuit court for trial by jury, it was said — though the point was not necessarily involved — that there might arise cases in which it would be proper

to submit a special issue based on the alleged existence of insane delusions of a testator of otherwise sound mind, which may have operated to take away his capacity to make the particular will in controversy. *Safe Deposit Co.* v. *Sweeney,* 3 App. D. C. 401, 404. But the formation of such an issue for transmission was expressly referred to as " In addition and in subordination to the first," or broad issue.

In accordance with this view there would seem no good reason why the issue as framed might not follow the broad issue if the caveator desires.

There is nothing, however, to prevent the caveator, under the broad issue alone, from confining her evidence on the trial to the alleged special incapacity by reason of the insane delusions of the testator. In such event the court would instruct the jury in the law applicable to the particular phase of the case presented by the evidence, and direct them to find, as in the special issue framed, whether the testator was at the time of the execution of the will, " under the influence of any insane delusion or delusions with respect to his property and the natural objects of his bounty, or either of them, which prevented him from then having a sound and disposing mind and rendered him incapable of executing a valid deed or contract, where the subject of said delusion or delusions was involved."

If she shall obtain a verdict and judgment thereon, probate will be denied. If she shall fail, then the will ought to be admitted to probate once for all. As far as possible under the law there should be an end of litigation.

The policy of the old law was to comprehend all the issues relating to the validity of a will, as far as practicable, " so that it may be definitely ascertained in a single proceeding, if possible, whether a paper, purporting to be of testamentary character, is or is not a valid instrument." *Dugan* v. *Northcutt,* 7 App. D. C. 351, 365.

In that case it was held that a judgment admitting a will to probate, after verdict upon issues framed under the caveat of one party and transmitted to the circuit court for trial in accordance with the procedure at that time, concluded all

persons in respect of any matter within the scope of the issues so determined.

The act of June 8, 1898 (see also D. C. code, Sec. 140), changes the former procedure in some important respects. Among these the issues when framed are to be tried by jury in the orphans' court itself.

Section 6 of the above entitled act, concludes with the following, which is also embodied in section 140 of the code: " In all cases in which such issues shall be tried the verdict of the jury and the judgment of the court thereupon shall, subject to proceeding in error and to such revision as the common law provides, be *res judicata* as to all persons, nor shall the validity of any such judgment be impeached or examined collaterally " (D. C. code, Sec. 140).

Referring to the foregoing it is said in the brief for the appellant: " It will be observed that according to the above-quoted language the *verdict* and *judgment* are to be *res judicata* as to all persons, not the questions of the execution and validity of the will."

It is not necessary, and would be decidedly inappropriate, to attempt to determine, now, whether an adjudication in favor of the proponent under the special issue as adopted in this case, would be *res judicata* as to all persons in respect of the general capacity of the testator to make the will. If not, then for the same reason, it would not bar a second caveat by this caveator filed within the statutory period. Assuming that it would not bar a second proceeding on the broader ground, the impropriety of limiting the issue to the narrow ground becomes manifest. It would be plainly against the sound public policy that reprobates repeated litigation, as well as detrimental to the interests of the many legatees and devisees named in the will.

For the reasons given, the order appealed from will be reversed, with costs, and the cause will be remanded for further proceedings not inconsistent with this opinion. *Reversed.*